UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALISA COTTON,

Plaintiff,

-vs-

Case No. 8:13-CV-03151-RAL-AEP
24 June 2014
Tampa, Florida
10:50 a.m.

POLK COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Florida,

Defendant.
---------------------------------/

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RICHARD A LAZZARA,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff: JANICE L. JENNINGS, ESQUIRE
Law Office of Janice L. Jennings
P.O. Box 1013
West Palm Beach, Florida 33410
(561) 472-0728
jljennings.jenningslaw@gmail.com

For the Defendant: HANNAH CHOI, ESQUIRE
**DAVID STEFFAN, ESQUIRE**
Constangy, Brooks & Smith, LLP
100 N. Tampa Street
Suite 3350
P.O. Box 1840
Tampa, Florida 33601-1840
(813) 223-2515
hchoi@constangy.com

Reported By: PAUL K. SPANGLER, RPR,
Official Court Reporter
Certificates of Merit and
Proficiency, Notary Public
(813) 301-5898

STENOGRAPHICALLY RECORDED
COMPUTER-AIDED TRANSCRIPTION
BY ECLIPSE

(10:50 a.m.) P R O C E E D I N G S

THE BAILIFF: All rise.

(Pause.)

Be seated, please.

THE COURT: Call the case, please, Madam Clerk.

THE DEPUTY CLERK: Yes, Your Honor.

The case now before this Court is Case Number 8:13-CV-3151 dash T dash 26AEP, Elisa Cotton versus Polk County Board of County Commissioners.

Counsel, please state your appearances.

MS. JENNINGS: For the plaintiff, Janice L. Jennings.

MS. CHOI: Anna Choi for defendant.

MR. STEFFAN: David Steffan for defendant.

THE COURT: Steffan?

MR. STEFFAN: Steffan, yes, sir.

THE COURT: Okay, Mr. Steffan.

I understand Mr. Campbell is preoccupied in another court?

MR. STEFFAN: Yes. Unfortunately somebody issued an order first and ordering him to Gainesville.

THE COURT: All right.

I note the presence of Ms. Cotton before the Court.

Of course we're here on another motion to compel

filed by the Polk County Board of County Commissioners on June 17th at docket 53.

Before I get there, I need to recite what I believe to be, uh, a litany, if you will, of this case.

On March 31st at docket 17 the defendant filed a motion to compel and for attorneys fees based on the fact that the plaintiff had failed to respond to interrogatories and requests to produce which were served on March 20th -- excuse me, February 20th.

On April 1st at docket 18 I granted that motion, and I directed a response no later than April 8th. Meaning, to respond to the discovery request.

I denied the attorneys fees request without prejudice to it be renewed if the plaintiff failed to comply.

On April 17th at docket 19 the defendant filed a motion to determine sufficiency of the plaintiff's responses to request for admissions and compel complete discovery responses and renewed motion for fees.

That same day at docket 20 I entered an endorsed order directing an expedited response to the motion by April 23rd, and I set an expedited hearing for April 25th.

On April 24th at docket 24 I entered the following order:

On April 17, 2014 this Court entered an endorsed

order at docket 20 directing the plaintiff to file an expedited response to the defendant's motion to compel filed at docket 19 on or before April 23rd, 2014.

In that order the Court also scheduled an expedited hearing on the defendant's motion to compel for Friday, April 25, 2014 at 11:30 a.m., which the Court subsequently changed to 1:30 p.m. on that same day.

A review of the Court's docket reflects that the plaintiff has failed to file a timely response to the defendant's motion to compel as previously directed by the Court.

Accordingly, the plaintiff, through counsel, is put on notice that should she fail to file a response by 12 noon today, the Court will grant the motion, along with the defendant's request for the assessment of a reasonable attorneys fee, and cancel the expedited hearing.

On April 24th at docket 25 the plaintiff filed a response, stating that all the issues had been resolved.

On April 24th, that same day, at docket 26, the defendant filed a motion to strike that response because plaintiff's counsel had made material misrepresentations.

On April 24th at docket 27 I then entered the following endorsed order:

Endorsed Order:

That upon receipt of a telephonic voice mail to

chambers from the defendant's counsel that plaintiff's representations made in the plaintiff's response to the defendant's motion to compel are untrue, the motion entered scheduled for tomorrow, Friday, April 25, 2014 at 1:30 p.m. will proceed as scheduled.

The transcript of that April 25th hearing is filed at docket 51.

I would note that Ms. Jennings was one half hour late. Out of an abundance of caution we called her on her cell phone, and she said she would be right here, and she showed up a half hour late.

(Pause.)

After that hearing, on April 30th at docket 36, defendant filed a motion to compel plaintiff's deposition, which plaintiff's counsel had unilaterally cancelled.

On docket -- on that same day at docket 37 I entered the following order:

Upon due and careful consideration of the procedural history of this case, it is order and adjudged that the defendant's motion to compel plaintiff's deposition and motion for sanctions is granted because the plaintiff's counsel acknowledged before this Court at a hearing held in this case on April 25th, 2014, that the plaintiff's deposition was scheduled for April 30th, 2014, any response for opposing the motion would be meritless.

And I dropped a footnote:

It is the Court's recollection that the plaintiff's counsel corrected the defendant's counsel with regard to the actual date of the deposition, and once it was agreed that the deposition was scheduled for April 30th, the Court directed the plaintiff and her counsel to fully comply with the defendant's previous discovery requests by April 29th so that the defendant's counsel would have the discovery prior to the deposition.

The body of my order further continues:

Furthermore, if the plaintiff's counsel was of the opinion that the defendant was improperly scheduled, she should have sought relief from this Court rather than unilaterally canceling the deposition.

Indeed, if the plaintiff's counsel was of the opinion that the deposition was improperly scheduled, she should have brought the matter to the attention of the Court at the April 25th hearing.

The Court will schedule the deposition with plaintiff at the upcoming hearing scheduled for May 9th, 2014. At that hearing the Court will also meet out sanctions to the plaintiff's attorney.

On April 6th at docket 38 the defendant filed a notice of partial resolution of the motion to compel the plaintiff's deposition.

On April 9th I -- I held a hearing, but Ms. Jennings did not appear.

One half hour after the hearing ended she called, said she was on her way. And basically my law clerk said, well, the hearing's over.

On April 9th at docket 42 I entered the following order:

Upon due and careful consideration of the procedural history of this case, which the Court summarized at the hearing held in this case this day, in which amply demonstrates a continuing pattern by plaintiff's counsel in failing to follow the orders of this Court in abusing the discovery process, together with the fact that the plaintiff's counsel failed to attend today's hearing, even though properly notified of the date, time and place of the hearing, and for the reasons announced on the record, it is order and adjudged as follows:

The plaintiff and the plaintiff's counsel shall appear before this Court on Friday, May 16th, 2014 at 9:30 a.m. in courtroom 15(b), United States Courthouse, 801 North Florida Avenue, Tampa, Florida, to show cause why this case should not be dismissed with prejudice.

The plaintiff's counsel upon receipt of this order shall immediately notify the plaintiff of this order and the requirement that she personally attend the show cause

hearing.

The defendant shall cooperate in granting the plaintiff leave from her employment with the defendant to attend the hearing. In the event either the plaintiff or her counsel fails to attend the hearing, the Court will dismiss the case with prejudice.

On April -- on May 10th at docket 44 the plaintiff's response to the motion to compel, uh, plaintiff's deposition. Uh, the transcript of the May 16th hearing appears at docket 49.

I discharged the order to show cause. I directed the plaintiff to comply with the discovery requests. I held sanctions in abeyance, and I warned that it was the last time.

And now I'm faced with another motion to compel filed by the defendants.

Ms. Jennings has filed a response at docket 58 yesterday, even though I gave her until Sunday.

Ms. Jennings, you say in here that your client does not recall receiving the defendant's second request for production of documents, namely her computer and electronic storage devices.

MS. JENNINGS: Yes, sir.

THE COURT: Did you receive a copy?

MS. JENNINGS: Yes, sir, I believe that I did.

THE COURT: Well, what did you do with it?

MS. JENNINGS: Uh, I -- I believe I received a copy of it electronically. And --

THE COURT: And you had 30 days to respond.

MS. JENNINGS: No, sir, what I'm saying is I -- let me be clear, please.

I believe I received a copy of it when Mr. Campbell and I had a conversation, and he emailed it to me, uh, and I believe that that's when I would have received a copy of it.

And that Mr. Campbell, uh, prior to that, uh, had asked -- we had had discussions concerning, uh, a laptop that Ms. Cotton uses.

THE COURT: Did you receive his second request for production of documents?

MS. JENNINGS: I believe that I did receive --

THE COURT: Did you respond within 30 days?

MS. JENNINGS: No, sir, I did not.

THE COURT: Why not?

MS. JENNINGS: My lack of response was not willful, Your Honor, but because of the reasons that I have stated in a prior file --

THE COURT: You mean with regard to the electronic device?

MS. JENNINGS: Yes, sir.

THE COURT: We're back to that again?

MS. JENNINGS: Yes, sir.

THE COURT: Are you again accusing Mr. Campbell of improperly using that device?

MS. JENNINGS: Yes, sir.

THE COURT: To impose torture on you?

This matter --

MS. JENNINGS: Your Honor --

THE COURT: I don't live in a cave, if you will, I read the newspapers and I'm well aware of an article that was written about you in the Tampa Bay Times recently.

And in your response you make -- well, in your request for an extension of time you reference some Florida -- some Florida Bar matter that you had to deal with. What is that all about?

MS. JENNINGS: The micro chips.

THE COURT: Is the Bar taking action against you?

MS. JENNINGS: Yes. Yes, sir.

THE COURT: In what forum?

(Pause.)

MS. JENNINGS: Your Honor, I would beg the Court not to have me answer those questions in this forum.

THE COURT: So you admit you received the -- the request, and you didn't respond to it?

MS. JENNINGS: Yes, sir, I believe that I got that

electronically and I did not, Your Honor.

THE COURT: Did you give it to Ms. Cotton?

MS. JENNINGS: No, sir, I did not.

THE COURT: Ms. Cotton, do you still want Ms. Jennings to represent you?

THE PLAINTIFF: Yes, sir.

THE COURT: I'm sorry?

THE PLAINTIFF: Yes, sir.

THE COURT: Okay.

I'm aware that in -- you representing someone else, Ms. Jennings, before Judge Scriven --

MS. JENNINGS: Yes, Your Honor.

THE COURT: -- and she had that client file an affidavit saying she still wanted your representation.

MS. JENNINGS: Yes, sir. I'm -- she -- my client filed such an affidavit at least, sir, yes, sir.

THE COURT: Who's here as lead counsel?

Ms. Choi, you?

MS. CHOI: Yes.

THE COURT: Are you aware of what's going on with the Bar, that -- and if you are, can you relate it to me, or is it confidential?

Or Mr. Steffan?

MR. STEFFAN: Your Honor, maybe I can address that.

Uh, I don't know about its confidentiality, but since you've asked, I will disclose it to you. We have filed multiple grievances against Ms. Jennings with regards to the other case with regards to some cooperation, one involves her contacting our client directly with regards to a public records request --

THE COURT: Wait a minute, wait a minute. Has the Bar taken any action?

MR. STEFFAN: There's an investigation going on, and we've been notified of a letter that it was sent to a panel, uh, but we have not been made aware of what has been -- what action has been taken since that time.

THE COURT: All right.

Ms. Choi, let me ask you this: If I compel production of her computers, how are you going to protect her privacy rights?

MS. CHOI: Well, firstly, I would like to address, uh, Ms. Jennings' claims that she didn't get it, uh, until --

THE COURT: She just acknowledged to me she -- she received it.

MS. CHOI: She received it, and she says -- or she didn't -- her client was unaware.

We served these discovery requests May 9th, and we took plaintiff's deposition on May 14th wherein she

testified she was aware of the discovery requests for her computer.

I have the deposition transcript.

THE COURT: Give it to me.

(Pause.)

MS. CHOI: Would you like the complete transcript or the --

THE COURT: I want the relevant portions.

MS. CHOI: Okay.

(Pause.)

THE COURT: So you -- why did you send the second request for production?

What -- what prompted you to do that with regard to your belief that she had information on her computer?

MS. CHOI: Uh, plaintiff has not been fully compliant with our first request for production --

THE COURT: No, I understand that, but what made you believe she had this information on her computer?

MS. CHOI: Because she testified that she did.

THE COURT: When?

MS. CHOI: In her deposition.

THE COURT: On Ap -- but you did this on April -- on May --

MS. CHOI: She had a -- a previous deposition.

THE COURT: Oh, okay.

When was that?

Do you know -- all right, everybody just have a seat and speak into the mic.

Just have a seat.

MR. STEFFAN: It was in April, Your Honor. I don't have an exact date, but it was early April.

THE COURT: Sit down.

Okay, and so as a result of that --

MR. STEFFAN: Yes, Your Honor, she made some representations with regards to documents she had and some records she had, and they had been tied into some allegations in the complaint, uh, and when she did produce the records, we'd asked specifics about those records, and she said they were on her computer, therefore we made the request for the computer.

THE COURT: Okay, I'm looking at this deposition.

(Pause.)

Did you ask her to produce her computer at that deposition on April 16th -- on May 16th?

MS. CHOI: No, Your Honor, we made the discovery request May 9th. We were hoping she would bring it to her deposition. We didn't make a big deal out of it at that time because it was not due.

THE COURT: Okay.

MS. CHOI: So we just assumed that she would bring

it with her to her deposition.

THE COURT: All right.

Did you produce that computer here today?

No, I did not.

Question: Why not.

Answer: I just didn't bring it.

Question: Were you aware that we requested it be produced here?

Answer: Yes.

Why didn't you?

Ms. Jennings: Asked and answered.

By Mr. Campbell: Could you answer, please.

Answer: My attorney told me I didn't have to bring it.

Obviously she didn't have to bring it. But it shows to me that you were aware of it, Ms. Cotton.

MS. JENNINGS: Your Honor --

THE COURT: No.

Ms. Cotton, you were aware of that request for production, weren't you?

MS. JENNINGS: (Shaking head negatively).

THE COURT: I want to hear from her, please, Ms. Jennings.

THE PLAINTIFF: I was aware that I had to bring -- that they was asking for the computer, yes, sir.

THE COURT: Now --

MS. JENNINGS: May I, Your Honor?

THE COURT: Hold on.

How -- you want her computer?

MS. CHOI: Yes.

THE COURT: And once you get her computer, how are you going to protect her privacy?

MS. CHOI: When that document, uh, the request for production was served, we emailed on May 9th plaintiff addressing some of the concerns she filed in her response with respect to privacy, and we laid out it out for her that that's not what we are looking to pry into.

We have two emails at least where we address her concerns. They were -- she never responded to us.

THE COURT: How -- what are you going to do?

Say I -- say I say okay, give over -- what is it, a laptop?

MS. CHOI: Yes.

THE COURT: You just want that laptop?

MS. CHOI: And, uh, the request also seeks flash drives --

THE COURT: Okay.

She turns them over. Who are you going to give them to?

MS. CHOI: A forensic examiner.

THE COURT: And -- and he --

MS. CHOI: In the presence of plaintiff and her counsel.

THE COURT: Okay.

And he's going to ensure that he's just going to look for this -- these items?

MS. CHOI: Yes.

THE COURT: That deal with her business?

MS. CHOI: Yes.

THE COURT: Okay.

What's the matter with that, Ms. Jennings?

MS. JENNINGS: May I stay seated, Your Honor --

THE COURT: You may.

MS. JENNINGS: -- or shall I stand up?

THE COURT: No, you may stay seated.

MS. JENNINGS: Your Honor, the -- this is what's -- is the matter with that, Your Honor. Ms. Cotton is technically not the owner of that --

THE COURT: Who is?

MS. JENNINGS: She bought the computer for her son. Uh, and there are family members' information on the computer.

THE COURT: But they're going to --

MS. JENNINGS: Ms. Cotton has --

THE COURT: Were they protect?

MS. JENNINGS: Ms. Cotton has -- has produced everything she's got, everything off the computer to Mr. Campbell, printed out, hard copies.

MR. STEFFAN: (Shaking head negatively).

THE COURT: Ms. Cotton, let me ask you --

MS. JENNINGS: In addition to that --

THE COURT: You have an accountant who prepares your taxes?

THE PLAINTIFF: No, sir.

THE COURT: You prepare your own taxes?

THE PLAINTIFF: No, I go to this -- it's another community group that prepares my taxes.

THE COURT: I'm sorry?

THE PLAINTIFF: It's a community group that prepares my taxes.

THE COURT: And what documents do you give them with regard to your business?

THE PLAINTIFF: It's the information that I gave, uh, hard copies to Mr. Campbell.

MS. CHOI: Your Honor, uh, the -- the -- page 12 of the deposition you have, if you go up a few sentences, she testifies that documents we're seeking are in her computer. She claims sometimes it works sometimes it doesn't. On page 12.

(Pause.)

THE COURT: Well, she claims she's given you -- the -- the -- everything that's on her computer.

MS. CHOI: She has not.

She has testified -- I have the complete transcript -- several times that documents that we requested she did not produce, they're either at home or in her computer.

(Pause.)

THE COURT: Go ahead, Ms. Jennings.

MS. JENNINGS: Thank you.

Your Honor, first I need to go back to the, uh -- regard to the matter concerning Ms. Cotton.

Uh, she did not get a copy of the second request for production.

THE COURT: Tell me why I shouldn't dismiss this case right now based on the history that I just set forth, Ms. Jennings.

You have ignored the orders of the Court, you have failed to follow the self-operating discovery rules, you failed to respond, I have been patient with you, I have given you and your client every benefit of the doubt that I can, I've withheld the imposition of sanctions, I've withheld the assessment of attorneys fees, what more do -- what do I have to do to get your attention?

MS. JENNINGS: Your Honor --

THE COURT: Under these circumstances I am well within my rights, because I've tried everything I can to get your attention.

And -- and I'm also a little put out by your client, I don't think she's been forthcoming with me, and under Eleventh Circuit precedent I am well authorized to dismiss this case. Even if I do it without prejudice, her case is over with. Because if she tried to re-file, the 90 days has already run from the EEOC complaint. Or -- or from their notice of your right to sue.

I don't know what more I can do. You just don't respond.

MS. JENNINGS: Your Honor, there is another lawyer who is going to be coming on the case.

THE COURT: Who?

MS. JENNINGS: A Ms. Azuza Botchway[sic].

THE COURT: Where is she from?

MS. JENNINGS: Uh, she has practiced in Miami. She did a lot of work on the Marissa Alexander case.

THE COURT: I don't know who Marissa Alexander is.

Who -- who -- when is she coming on board?

Is she going to substitute in for you?

MS. JENNINGS: We're meeting this afternoon --

THE COURT: Is she going to substitute in for you?

(Pause.)

MS. JENNINGS: That has not been yet determined.

THE COURT: She's going to be then co-counsel with you?

MS. JENNINGS: Yes, sir.

In addition to that, Your Honor, uh, there is another, uh, lawyer who also may be coming on the case.

And may I -- may I continue, Your Honor?

THE COURT: Go ahead. I don't know what else you can tell me.

MS. JENNINGS: Okay.

(Pause.)

With regard to the, uh, your -- your, uh, statement right before I came to the, uh, podium, Your Honor, uh, I made some very personal disclosures to the Court earlier, and --

THE COURT: What are you talking about?

MS. JENNINGS: The truth is the truth -- concerning the micro chips, Your Honor.

And I have other counsel who are coming -- who's coming on the case, uh, a person who has, uh, experience with -- with novel issues, but more importantly, uh, Your Honor, a person who's very passionate about civil rights, and I believe that she will well serve Ms. Cotton.

THE COURT: Ms. Cotton, have you -- are you -- are you interviewing with this lawyer?

THE PLAINTIFF: Excuse me?

THE COURT: Are you going to interview with this lawyer?

THE PLAINTIFF: Yes, sir.

THE COURT: Is it your intent to have this lawyer take over your case?

THE PLAINTIFF: Today, yes, sir.

THE COURT: All right.

Well, how are you -- okay.

Is the lawyer -- is your -- is this new lawyer aware of the history of this case, Ms. Cotton?

Or Ms. Jennings?

MS. JENNINGS: Thank you, Your Honor.

Uh, no, she is not, Your Honor. We will be -- I will be reviewing that with her this afternoon when we meet, and we will, uh -- as I said, Ms. Botchway is a person who's very passionate about civil rights cases --

THE COURT: We're all passionate about civil rights, I don't think -- so, you don't have to say that to me.

MS. JENNINGS: Okay.

THE COURT: I'm here to protect people's rights. I think I do a good job.

MS. JENNINGS: Yes, sir.

THE COURT: Now --

(Pause.)

So it's your intent, if you receive the computer and the flash drive, to undertake a forensic examination in the presence of Ms. Cotton and her counsel, protecting the privacy of -- of anybody else who may have used that computer; is that correct, Ms. Choi?

MS. CHOI: Yes.

THE COURT: Who is your forensic examiner?

MR. STEFFAN: We have not identified -- we use one typically, but we have not retained one at this time. We are waiting for production issues to be resolved before we hired or expert.

THE COURT: Okay.

MS. JENNINGS: Your Honor, may I finish, please?

THE COURT: Sure, go ahead.

MS. JENNINGS: Thank you, sir.

(Pause.)

The reason that the defendant states it wants the computer concerns Shania's Linens and Things, Your Honor. Miss -- and -- and that's the reason that they want the computer.

If Ms. Cotton has provided all of the documents on the computer, then, Your Honor, there's no need to get the computer when there is private family members' information on the computer. Some of it may be HIPAA related,

Your Honor.

I would beg the Court to allow us -- if the Court wants a forensic review, allow us to get our forensic expert to review the computer, and their forensic expert -- or they can ask whatever questions or whatever they want to know about the computer, and that will protect the privacy rights which must weigh into the decision of the Court of the other family members.

THE COURT: All right.

Well, I am not convinced that Ms. Cotton has been forthcoming with the relevant documents dealing with her outside employment from the defendant. We have been dealing with this issue now for several months, and I, quite frankly, grow weary of it.

I am going to grant the motion to compel. I'm going to withhold the assessment of attorneys fees.

MS. JENNINGS: Your Honor, we would ask that all --

THE COURT: Excuse me --

MS. JENNINGS: -- all forensic persons be present --

THE COURT: -- I'm not through yet.

MS. JENNINGS: I'm sorry.

THE COURT: I'm thinking ahead of you, all right?

The forensics examination shall take place in the

presence of Ms. Cotton, her attorney, her own forensic expert, if she wishes to have one.

MS. JENNINGS: Thank you, Your Honor.

THE COURT: All right. Here's what I want you to do -- do I have to set a date for this?

MS. JENNINGS: I think I would like for the Court to set a date for it, Your Honor.

MS. CHOI: We request a date as well.

THE COURT: Because I know what's going to happen if I leave it up -- never mind.

How long is it going to take you to retain someone?

Mr. Steffan, do you know?

MR. STEFFAN: I would think if not by the end of this week, by the middle of next week.

THE COURT: Where do you want the examination to take place?

MR. STEFFAN: At our office.

THE COURT: Okay.

(Pause.)

MS. CHOI: If --

MR. STEFFAN: Your Honor, if I may say, at our office, or if our expert were to request it, at his office. Or her office.

(Pause.)

THE COURT: Okay.

How about Monday, July 14th?

Check your calendars.

(Pause.)

MR. STEFFAN: Your Honor, I'm going to -- I'm going to -- if I may ask for a week later. I am -- Mr. Campbell, I believe, is scheduled to be out of town, and I'm in arbitration that week.

THE COURT: All right, April 21st -- I mean, July 21st.

MR. STEFFAN: Thank you.

THE COURT: How long's it going to take, do you think?

MR. STEFFAN: (Shaking head negatively) I would say hours. Tops. I --

THE COURT: All right. 9:00 o'clock.

Let's -- I want -- I want it to be there at the office of your forensic expert, or your office.

MR. STEFFAN: (Nodding affirmatively) Thank you, Your Honor.

THE COURT: Yes, Ms. Jennings.

MS. JENNINGS: Your Honor, because our forensic expert may be coming from Palm Beach County, could we start an hour later, at 10, please?

THE COURT: All right, that's fine, I'll

accommodate you. 10:00 o'clock.

MS. JENNINGS: Thank you, sir.

THE COURT: Ms. Cotton, I don't want to interfere with the attorney/client relationship. You've chosen Ms. Jennings. Now it looks like you may want someone else. I want to advise you, though, of what the law provides.

This is an opinion from the United States Supreme Court, and it's called Pioneer Investment Services Company verses Brunswick Associates. And it's cited at 113 Supreme Court Reporter 1489. Decided in 1993 by the United States Supreme Court.

And at page 1499 this is what the Court said:

In other contexts we have held that clients must be held accountable for the acts and omissions of their attorneys. In Lip[sic] versus Wabash we held that a client may be made to suffer the consequences of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference.

In so concluding we found no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.

To the contrary, the Court wrote, petitioner voluntarily chose this attorney as its representative in the action, and he can not now avoid the consequences of the

acts or omissions of this freely selected agent.

Any other notion would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of his lawyer/agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

This principle also underlies our decision in United States versus Boyle that a client should be penalized for counsel's tardy failure to file a tax return. This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel.

The Eleventh Circuit Court of Appeals followed up on the Pioneer decision in a case called Downs versus McNeil at 520 Fed.3d 1311 decided in 2008.

MS. JENNINGS: Would you give the cite again. I'm sorry, Your Honor.

THE COURT: 520 Federal 3rd 1311. I think Judge Black wrote the opinion for the Eleventh Circuit joined by Judge Hill -- Hull, and Judge Wilson, who sits right above me literally.

Moreover, the -- your lawyer/your fault approach is consistent with the general principle that lawyers are -- are agents, and clients must be held accountable for the acts and omissions of their attorneys. Citing the Pioneer

decision.

Ms. Cotton, I point this out to you because the next time we have to have a hearing like this because your lawyer has failed to follow the rules, I'm going to dismiss the case.

THE PLAINTIFF: Yes, sir.

THE COURT: I don't think you want that.

THE PLAINTIFF: No, sir.

THE COURT: Remember, your lawyer/your fault. She's your agent. Her actions are chargeable to you.

THE PLAINTIFF: Yes, sir.

THE COURT: Anything else?

And I mean it.

Ms. Jennings, if I get another motion to compel, I'm going to do another order to show cause, and if their motion to compel is well taken, I am going to dismiss this case.

Mr. Steffan, Ms. Choi, anything else?

MS. CHOI: Yes, Your Honor.

Uh, we learned for the first time there might be new counsel Azize[sic] Botchway. Can we, uh, request the Court to have plaintiff or her counsel have by a certain date to decide whether there will be a substitution of counsel?

THE COURT: No, I'm not going to do that.

That's -- that's up to Ms. Cotton. Okay? I'm not going to interfere with her attorney/client relationship. I hope she gets new counsel. I truly do.

Do you know who this new counsel is?

MS. CHOI: No.

THE COURT: Oh, okay.

No, I will not do that.

Ms. Jennings, anything else?

MS. JENNINGS: Yes, Your Honor. I just want it to be clear, Your Honor, that while I -- you know, that if I did not give a copy of the discovery to Ms. Cotton, I didn't want the Court to think --

THE COURT: She chose you. Your lawyer/your fault.

MS. JENNINGS: But I just want it to clear because I didn't want the Court thinking --

THE COURT: Well, I think this deposition contradicts that. All right.

MS. JENNINGS: I didn't want the Court thinking bad of Ms. Cotton, Your Honor, because although Mr. Campbell and I had been discussing the computer and the -- I would like for the Court to allow us to review it to see if there's any HIPAA information on the computer and things like --

THE COURT: You're going to have your expert

there, they're going to have their expert there, I'll leave it to them.

MS. JENNINGS: But there may be confidential medical information -- I'm just asking the Court to let us review it first before --

THE COURT: No.

MS. JENNINGS: -- that happens and report back so that that won't be looked at by anyone.

THE COURT: No. You're going to -- you're going to do a forensic examination on the date that I just said with both experts being there.

(Pause.)

All right. Thank you.

THE BAILIFF: All rise.

(Thereupon, the hearing was concluded at 11:26 a.m.)

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH )

I, PAUL K. SPANGLER, Official Court Reporter for the United States District Court, Middle District, Tampa Division,

DO HEREBY CERTIFY, that I was authorized to and did, through use of Computer Aided Transcription, report in shorthand the proceedings and evidence in the above-styled cause, as stated in the caption hereto, and that the foregoing pages numbered 1 to 33, inclusive, constitute a true and correct transcription of my shorthand report of said proceedings and evidence.

IN WITNESS WHEREOF I have hereunto set my hand in the City of Tampa, County of Hillsborough, State of Florida, this 4th day of July, 2014.

S/PAUL K. SPANGLER

PAUL K. SPANGLER, Official Court Reporter